PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HARVEY III, | ) | |
| | ) | CASE NO.  4:23CV1518 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| MAYOR WILLIAM FRANKLIN, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 58 and 60] |

Pending is Defendants City of Warren, Ohio, Mayor William Franklin, Building Official

Christopher Taneyhill, and Director of Public Service and Safety Services Eddie Colbert's

Motion for Summary Judgment (ECF No. 58).  Defendants move the Court for an order granting

them summary judgment and dismissing with prejudice all of Plaintiff's claims against them.

The Court has been advised, having reviewed the record, the parties' briefs, and the applicable

law.  For the reasons that follow, the Court grants summary judgment to Defendants.

## I. Stipulated Facts

The stipulated facts[1] are as follows:

1. *Pro Se* Plaintiff Robert Harvey III has been the owner of the property known as 369

Tod Ave. Warren, Ohio 44485 ("Plaintiff's Property").  *See* Affidavit of Plaintiff (ECF No. 65).

---

[1] *See* Joint Statement of Stipulated Facts (ECF No. 70) (stating, "[a]fter
Defendants' Statement of Stipulated Facts was filed, Plaintiff agreed to all facts stipulated
to in Defendants' Statement of Stipulated Facts as well as Defendants' rejection of
additional stipulated facts that Plaintiff proposed.").

(4:23CV1518)

2. On October 25, 2022, the City of Warren sought an administrative search warrant for Plaintiff's Property.  *See* Plaintiff's Response (ECF No. 63) at PageID #: 947.

3. On October 27, 2022, the City of Warren executed an administrative search warrant for Plaintiff's Property.  *See* ECF No. 63 at PageID #: 947.

4. In June of 2023, Theodore Jackson supplied materials and labor to secure the building for a total value amount of about $350.00.  *See* ECF No. 65.

5. On or about July 19, 2023, City of Warren Building official, Chris Taneyhill ("Taneyhill), approached Plaintiff on Plaintiff's Property.  *See* ECF No. 65.

6. On July 20, 2023, Taneyhill posted a stop work order sign on the front door of Plaintiff's Property.  *See* Affidavit of Theodore Jackson (ECF No. 63-1 at PageID #: 953-54).

7. On August 8, 2023, Taneyhill sent an email to Plaintiff's attorney, Michael Rossi, stating that Plaintiff had not complied with the order's time frame and the building was being prepared for demolition.  *See* Plaintiff's Exhibit 13 (ECF No. 63-1 at PageID #: 967).

8. Warren City Building Inspection files, records, and legal documents were forwarded to Robert Harvey III from attorney Michael Rossi and from Taneyhill around August of 2023.

9. All depositions taken by Plaintiff during discovery were recorded and produced legally, and conducted with legal counsel for each defendant present.

## II.  Background

Taneyhill is the City's Building Official.  Plaintiff's Property is "[a]n unoccupied commercial one-story beige brick building" with an attached greenhouse and a parking area in the front, side and rear of the building.  Administrative Search Warrant (ECF No. 58-2 at PageID

(4:23CV1518)

#: 617).  Plaintiff's Property is required to comply with the Ohio Building Code and the City's

Codified Ordinances.

On October 3, 2022, Taneyhill observed blighted and unsafe conditions from the exterior

of Plaintiff's Property.  *See* Building Report (ECF No. 58-2 at PageID #: 612-14).  He assigned

City building inspectors Greg Fridley and Harry Kriner to view and photograph the exterior of

Plaintiff's Property for possible code violations and repair orders.  Plaintiff, however, confronted

the building inspectors while in the property's parking lot and demanded the inspectors to "get

off the property."  The building inspectors complied.  *See* Affidavit of Christopher Taneyhill, Sr.

(ECF No. 58-2 at PageID #: 609, ¶¶ 8-9).

Following the inspectors' attempted exterior inspection, an administrative search warrant

for Plaintiff's Property was issued on October 25, 2022 by a Judge on the Warren Municipal

Court.  *See* ECF No. 58-2 at PageID #: 617; ECF No. 63 at PageID #: 947, ¶ 19.  The warrant

was supported by Taneyhill's Search Warrant Affidavit stating that probable cause existed based

on the exterior observations of Plaintiff's Property falling into disrepair, and because both water

and electricity had been turned off at the commercial property.  *See* ECF No. 58-2 at PageID #:

616.  As a result of the administrative inspection on October 27, 2022, multiple building code

violations were observed and made part of an adjudication order.  *See* Dec. 21, 2022 Violation

Order (ECF No. 58-2 at PageID #: 619-23) (condemning Plaintiff's Property); ECF No. 63 at

PageID #: 947, ¶ 19.

The Violation Order – which outlined 17 violations of the Ohio Building Code, four

violations of the City's Codified Ordinances, and Plaintiff's right to appeal – was sent to Plaintiff

via certified mail.  *See* ECF No. 58-2 at PageID #: 610, ¶¶ 13-15; Violation Order POS (ECF No.

(4:23CV1518)

58-3).  The Violation Order provided a right to appeal sufficiently in advance of any proceeding, but Plaintiff failed to exercise such right.  The Court notes Plaintiff makes no argument and provides no support in the Memorandum in Opposition (ECF No. 63) that he exercised his right to appeal the Violation Order or any other administrative action by Defendants.

On July 19, 2023, Theodore Jackson, an unregistered contractor at the time, "was just securing the building from animals and would apply for a permit if [Plaintiff] wanted to contract with me for my services." ECF No. 63-1 at PageID #: 953.  He was verbally advised by Taneyhill to stop work on Plaintiff's Property for lack of a building permit.  *See* ECF No. 58-2 at PageID #: 613.  Following this interaction, Plaintiff was issued a Notice of Violation that outlined violations of the City's Codified Ordinances §§ 1305.015, 1307.01, and 1309.01 which included Plaintiff's right to appeal under Codified Ordinance § 1311.01.  *See* July 19, 2023 Notice of Violation (ECF No. 58-2 at PageID #: 624-27).

On July 20, 2023, the unregistered contractor was again seen attempting to work on Plaintiff's Property.  *See* ECF No. 58-2 at PageID #: 613.  City building officials then posted a "Stop Work Order" notice on Plaintiff's Property and hand-delivered a copy to Jackson.  *See* ECF No. 58-2 at PageID #: 613; July 20, 2023 Stop Work Order (ECF No. 58-2 at PageID #: 628-29).  Jackson was also advised that the building was scheduled for demolition.  As Taneyhill was leaving, Plaintiff confronted Taneyhill claiming that Plaintiff never received proper notice of demolition for Plaintiff's Property.  Despite having provided prior notice, Taneyhill physically provided Plaintiff a file folder of the investigation documents for Plaintiff's Property.  *See* ECF No. 58-2 at PageID #: 613.

4

(4:23CV1518)

On August 4, 2023, Plaintiff filed the original Complaint (ECF No. 1) in the above-entitled action.[2]

In October 2023, a criminal complaint was filed against Plaintiff in the Warren Municipal Court.  *See* *City of Warren v. Robert Harvey III*, No. 2023 CRB 002021 (Warren Mun. Ct. Oct. 17, 2023) ("the state court action").  Plaintiff was charged with five misdemeanors alleging violations of the City's Codified Ordinances:  permit required (1307.01) (Count 1); unauthorized entry upon nuisance premises (1367.19) (Count 2); and three counts of prohibited acts (1313.01) (Counts 3-5).[3]

In an effort to obtain Plaintiff's compliance with building code violations and resolve the present case, the City agreed that it would remove Plaintiff's Property from the demolition list and dismiss without prejudice the pending criminal charges.  *See* Memorandum in Support (ECF No. 58-1) at PageID #: 593.  On December 6, 2023, the City executed a Contract Addendum (ECF No. 58-4), which removed Plaintiff's Property from the original demolition contract.  According to Defendants, the City filed a Motion to Dismiss Without Prejudice in the state court case.  Defendants declare the City's motion was filed in an effort to afford Plaintiff additional time and opportunity to repair Plaintiff's Property in compliance with the Ohio Building Code

---

[2]  Ohio's two-year statute of limitations for bodily injury suits applies to claims asserted under § 1983.  *See* *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097, 1105 (6th Cir. 1995).  Plaintiff's Memorandum in Opposition (ECF No. 63), however, makes claims to incidents that occurred in 2018 and 2019, which fall well outside the limitations period.

[3]  A court may take judicial notice of facts contained in state court documents, including a state court docket sheet.  *See* *Great Am. Ins. Co. v. GeoStar Corp.*, No. 09-12488-BC, 2010 WL 845953, at *19 (E.D. Mich. March 5, 2010) (citing Fed. R. Evid. 201(b)(2)).

(4:23CV1518)

and the City's Codified Ordinances.  *See* ECF No. 58-1 at PageID #: 593.  On April 3, 2024, all

charges against Plaintiff in the state court action were dismissed.

On April 18, 2024, Plaintiff filed an Amended Complaint (ECF No. 29-1) in this fee-paid

action under 42 U.S.C. § 1983.  Plaintiff alleges claims against Defendants related to the City's

attempt to enforce building code violations against the Plaintiff Property.  Specifically, Plaintiff

is asserting constitutional claims against Defendants for interfering with Plaintiff's right to use

and maintain the 369 North Tod Ave. property.  The Amended Complaint (ECF No. 29-1)

appears to assert a selective enforcement claim and/or substantive due process claim under the

Fourteenth Amendment.  It also asserts pendent state law claims for trespass and malicious

prosecution.  The relief sought includes restraints upon the City enforcing its building code

ordinances upon Plaintiff's Property and a request for monetary damages in excess of $75,000.

As of January 14, 2025, Plaintiff has failed to take any steps to correct the building code

violations at 369 Tod Ave. property.  *See* ECF No. 58-1 at PageID #: 593.

### III.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  Fed. R. Civ. P. 56(c)(1)(A)

requires a party requesting summary judgment in its favor or an opposing party "to go beyond the

pleadings" and argument, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and cite to

"particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made for purposes of

(4:23CV1518)

the motion only), admissions, interrogatory answers, or other materials."  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute.  An opposing party may not simply rely on its pleadings.  Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence

7

(4:23CV1518)

is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.* (citing *Anderson*, 477 U.S. at 252).

"It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997); *see also Guarino*, 980 F.2d at 410 ("Neither the trial nor the appellate court . . . will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party."). Fed. R. Civ. P. 56(c)(1). "[T]he court is not required to search the record for some piece of evidence which might stave off summary judgment." *Id.* It is also well settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

## IV. Analysis

Defendants are entitled to summary judgment on all § 1983 claims because Plaintiff fails to establish a violation of the Fourth and/or Fourteenth Amendments.

### A. Fourth Amendment Claims

The Fourth Amendment claims fail as a matter of law because there is no violation by building officials' visual inspections of the exterior of Plaintiff's Property and then,

8

(4:23CV1518)

subsequently, executing a valid administrative search warrant to conduct a full inspection. The initial inspections occurred from the street and parking lot of the commercial property.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment prohibits unreasonable searches of commercial premises. *New York v. Burger*, 482 U.S. 691, 699 (1987). The expectation of privacy in a commercial premises, however, is less than in a private home. *Id.* at 700. Defendants point out that under the City's Codified Ordinance § 1323.03(a), a building inspector shall "[i]nspect or cause to be inspected semiannually, all . . . commercial . . . buildings for the purpose of determining whether any conditions exist which render such places a dangerous building . . . ."

The Fourth Amendment does not bar a government official from entering upon the curtilage of Plaintiff's commercial property to make observations of the property's exterior to determine whether building code violations exist. A naked-eye observation for administrative purposes from a commercial property's curtilage, without entering the property, does not violate the Fourth Amendment. *Conrad v. City of Berea*, 243 F. Supp.3d 896, 906 (N.D. Ohio 2017) (citing *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 585-86 (6th Cir. 2005) (applying the reasonable expectation of privacy approach)); *see also Marshall v. Barlow's Inc.*, 436 U.S. 307, 315 (1978) (finding no warrant is required for inspections under Fourth Amendment for portions of commercial premises open to and observable by the public).

In addition, the interior administrative inspection of Plaintiff's Property was performed in accordance with a valid search warrant. The Fourth Amendment does not prevent a government official from entering Plaintiff's Property without consent when an administrative warrant for the

9

(4:23CV1518)

commercial property is obtained. *See v. City of Seattle*, 387 U.S. 541, 545-46 (1967). Indeed, once a Court has issued a search warrant, an administrative entry upon a non-public area of a commercial property without consent does not violate the Fourth Amendment. *Id.*; *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015).

**B. Fourteenth Amendment Claim**

The Fourteenth Amendment procedural/substantive due process claim fails as a matter of law because ample notice was provided; Plaintiff failed to show he was deprived of a constitutionally protected interest; and, the City's actions were not arbitrary and capricious.

**1. Procedural Due Process**

Plaintiff's procedural due process claim fails because the City provided ample notice to Plaintiff of the violations discovered on Plaintiff's Property. The Violation Order (ECF No. 58-2 at PageID #: 619-23) provided a right to appeal and was provided sufficiently in advance of proceeding with any action against the commercial property.

Under the Due Process Clause, actual notice is not required before the government may take property. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Instead, the government is required to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Generally, mailing notice to a person's home address satisfies procedural due process. *Id.* at 234. Furthermore, "posting notice on real property is a singularly appropriate and effective way of ensuring that a person . . . is actually apprised of proceedings against him." *Id.* at 236 (internal quotation marks and citation omitted). This does not mean, however, that notice "is a mere

10

(4:23CV1518)

gesture." *Mullane*, 339 U.S. at 315.  Instead, "notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *Id.* at 314 (citations omitted).  The adequacy of notice is evaluated from the perspective of the sender, not the recipient." *Ming Kuo Yang v. City of Wyoming*, 793 F.3d 599, 602 (6th Cir. 2015) (quoting *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013)).

On December 21, 2022, the City issued Plaintiff a Violation Order via certified mail outlining seventeen 17 violations of the Ohio Building Code, four violations of the City's Codified Ordinances, and Plaintiff's right to appeal.  *See* ECF No. 58-2 at PageID #: 610, ¶¶ 13-15; Violation Order POS (ECF No. 58-3).  In July 2023, Taneyhill issued Plaintiff a Notice of Violation that outlined violations of the City's Codified Ordinances which again included Plaintiff's right to appeal.  *See* July 19, 2023 Notice of Violation (ECF No. 58-2 at PageID #: 624-27).  On July 20, 2023, City building officials posted a "Stop Work Order" notice on Plaintiff's Property, and Taneyhill physically provided Plaintiff a file folder of the investigation documents for Plaintiff's Property.  *See* ECF No. 58-2 at PageID #: 613.  These notices adequately notified Plaintiff of the violations and allowed him the opportunity to either fix the violations or appeal the determinations.  Thus, as a matter of law, proper notice and procedural due process were provided to Plaintiff.

### 2. Substantive Due Process

Plaintiff's substantive due process claim fails because he fails to demonstrate that he was deprived of a constitutionally protected interest and that any of the City's actions were arbitrary and capricious.

11

(4:23CV1518)

To succeed on a substantive due process claim, a plaintiff must show that "arbitrary and capricious government action deprive[d] [him] of a constitutionally protected property interest," *Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005), or that the defendants' conduct "shock[s] the conscience," *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003) (quoting *Braley v. Pontiac*, 906 F.2d 220, 224-25 (6th Cir. 1990)). Plaintiff in the case at bar has not alleged any conscience-shocking conduct by Defendants. To establish a substantive due process claim, Plaintiff has to show that the enforcement of the City's Codified Ordinances "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Nectow v. City of Cambridge*, 277 U.S. 183, 187-88 (1928) (internal quotation marks omitted). In addition, a substantive due process claim is not ripe until the relevant local administrative process has resulted in a final decision regarding application of the regulations to the property at issue. *Insomnia, Inc. v. City of Memphis*, 278 Fed.Appx. 609, 612 (6th Cir. 2008) (citing *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985)).

In the present case, the City executed an administrative search warrant at Plaintiff's Property, issued Plaintiff a Violation Order via certified mail – which outlined violations of the Ohio Building Code and the City's Codified Ordinances, posted a "Stop Work Order" notice on the commercial property, and physically provided Plaintiff with a file folder of the investigation documents for Plaintiff's Property. All of these actions were taken pursuant to valid ordinances and Ohio laws relating to enforcement of the building codes for commercial properties. The enforcement of valid building code ordinances and laws to commercial buildings are relevant and

12

(4:23CV1518)

rationally related to the public health, safety or welfare.  *Braun v. Ann Arbor Charter Twp.*, 519

F.3d 564, 573-74 (6th Cir.2008).

Finally, Plaintiff's Property still remains as Plaintiff left it.  *See* ECF No. 58-1 at PageID

#: 593 ("As of the filing of this Motion for Summary Judgment, Plaintiff has failed to take any

steps to correct the building code violations."); PageID #: 599.  In December 2023, the City

removed Plaintiff's Property from the original demolition contract to provide Plaintiff an

opportunity to bring his property into compliance with the Ohio Building Code and the City's

Codified Ordinances.  *See* ECF No. 58-4.  In April 2024, all charges against Plaintiff in the state

court action were dismissed to afford Plaintiff additional time to repair the property.

**C.  Qualified Immunity**

Defendants argue the Individual Defendants are entitled to qualified immunity because

Plaintiff fails to show a constitutional right was violated, the Individual Defendants were

personally involved or Warren officers would know such conduct would violate the Constitution.

Once a defendant raises qualified immunity, the burden shifts to the plaintiff, who must

demonstrate both that the official violated a constitutional or statutory right, and that the right

was so clearly established at the time of the alleged violation that every reasonable official would

have understood that what he was doing violated that right.  *Ashcroft v. al-Kidd*, 563 U.S 731,

741 (2011).  If the plaintiff fails to carry this burden as to either element of the analysis, qualified

immunity applies and the official is immune.  *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491,

494 (6th Cir. 2012).  "Clearly established law" should not be defined "at a high level of

generality" and the clearly established law must be "particularized" to the facts of the case.

*Ashcroft*, 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

13

(4:23CV1518)

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step

inquiry for determining whether an official is entitled to qualified immunity.  *Id.* at 201.  The

Court must consider (1) whether, viewing the evidence in the light most favorable to the injured

party, a constitutional right has been violated; and (2) whether that right was clearly established.

*Id.*; *Mosier v. Evans*, 90 F.4th 541, 546 (6th Cir. 2024).  In *Pearson v. Callahan*, 555 U.S. 223

(2009), the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is

not mandatory, and courts have discretion to decide which of the two prongs of the qualified

immunity analysis to address first.  *Id.* at 236; *Williams v. City of Grosse Pointe Park*, 496 F.3d

482, 485 (6th Cir. 2007) (if a plaintiff is "unable to establish sufficient facts to support a finding

of a constitutional violation by the defendant, the inquiry ceases, and the court must award

judgment to the defendant").

In addition, to prevail in a § 1983 action, a plaintiff typically must show that the

defendants were "personally involved in the [alleged] constitutional violations."  *Binay v.*

*Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010); *see also Bennett v. Schroeder*, 99 Fed.Appx. 707,

712-13 (6th Cir. 2004) ("[i]t is well-settled that to state a cognizable Section 1983 claim, the

plaintiff must allege some personal involvement by [ ] each of the named defendants");

*Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-207 (6th Cir. 1998) (district court properly

granted defendants' motion for summary judgment when the materials submitted by Plaintiff in

response failed to show, in any respect, that the individual defendants encouraged or condoned

any alleged constitutional violations).  Plaintiff fails to show personal involvement by Mayor

Franklin or Director Colbert in the complained of conduct that forms the basis of the alleged

14

(4:23CV1518)

constitutional violations.  Indeed, there are no facts or allegations that either Mayor Franklin or

Director Colbert had any involvement in this matter.

　　　The Court does not address the qualified immunity argument of Mayor Franklin,

Building Official Taneyhill, and Director Colbert because it concludes, for the reasons set forth

above, that Plaintiff has not sustained his burden to demonstrate a deprivation of constitutional

rights regarding his claims.

**D.  *Monell* Claim**

　　　Plaintiff fails to establish a *Monell* claim against Defendant City of Warren because there

is no underlying constitutional violation and he does not demonstrate a violation of his

constitutional rights attributable to a municipality policy, practice or custom.

　　　Plaintiff declares his *Monell* claim is based upon a "Legal Theory" that the City practiced

"intentional negligence, a breach of their Fiduciary Duty and an outright betrayal of the public

trust" through "Tortious interfering acts" of "trespassing onto private property, illegal searches

and seizure" "that have caused property damages and harm to [him]."  ECF No. 63 at PageID #:

941 (underlining and capitalization in original).

　　　Defendants argue Plaintiff's claims fail to assert a viable claim under *Monell v. New York*

*City Dept. of Soc. Svcs.*, 436 U.S. 658 (1978), against the City.  In *Monell*, the Supreme Court

held that a municipality is subject to liability under § 1983 only if a custom or policy was the

moving force behind the alleged constitutional violation.  *Id.* at 690-91.

15

(4:23CV1518)

Because no constitutional violation has been shown, Plaintiff's *Monell* claim against Defendant City of Warren cannot survive as a matter of law.  *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation."); *Farinacci v. City of Garfield Hts.*, No. 1:08CV1355, 2010 WL 1268068, at *5 (N.D. Ohio March 30, 2010) ("[When] no constitutional violation occurred, there can be no *Monell* claim against the City, regardless of its policies."), *aff'd*, 461 Fed.Appx. 447 (6th Cir. 2012).

Plaintiff's inability to demonstrate a violation of his constitutional rights entirely undermines his § 1983 claims against the City as a city cannot be held liable "absent an underlying constitutional violation by its officers." *Katz v. Vill. of Beverly Hills*, 677 Fed. Appx. 232, 238 (6th Cir. 2017) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004)).

In addition to the absence of the necessary constitutional violation to substantiate a § 1983 claim, Plaintiff has also failed to point to a specific policy, practice or custom of Defendant City of Warren which resulted in the alleged Fourth and Fourteenth Amendment violations.  To be liable, the constitutional violation must result from an official policy; the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged;" and the plaintiff must demonstrate a causal link between the municipality's action and the constitutional violation.  *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)).  If the record fails to demonstrate that any individual building official actually violated

16

(4:23CV1518)

the plaintiff's rights, the municipality cannot be found liable, regardless of its policies. *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 404 (6th Cir. 2010) (citing *Heller*, 475 U.S. at 799).

Plaintiff cannot carry the heavy burden of a *Monell* claim wherein he must identify, with specificity, a policy or practice of the City which was the "moving force" behind the alleged Fourth and Fourteenth Amendment violations. Moreover, Plaintiff has failed to demonstrate a causal link between such policy and his alleged injury. *See Logan v. Twp. of W Bloomfield*, No. 16-cv-10721, 2018 WL 3631910, at *6 (E.D. Mich. July 31, 2018) (granting summary judgment when defendants argued plaintiff failed to identify any municipal policy or custom as the "moving force" behind any individual defendant's action that inflicted a constitutional injury).

Similarly, Plaintiff provided no evidence of Defendant City of Warren's deliberate indifference as to training, supervision or discipline of its building officials and/or administrative inspections. Failure to train claims require a showing of deliberate indifference. *See Amerson v. Waterford Twp.*, 562 Fed.Appx. 484, 490 (6th Cir. 2014) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). And deliberate indifference "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Id.* (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 815 (6th Cir. 2005)). Accordingly, there is no evidence of the City's deliberate indifference to inadequate training/supervision/discipline of its employees.

As such, Plaintiff's *Monell* claim against Defendant City of Warren fails as a matter of law.

17

(4:23CV1518)

**E.  Pendent State Law Claims**

Plaintiff asserts state law claims for trespass and malicious prosecution, which are

intentional torts.[4]  The latter claim is predicated upon the City's good faith dismissal without

prejudice of the charges against Plaintiff in the state court action.

Plaintiff's trespass and malicious prosecution claims fail as a matter of law because the

City and the Individual Defendants are entitled to Ohio Rev. Code Chapter 2744 immunity and

these state law claims otherwise fail on the merits.  The issue of whether a city is entitled to

immunity under Chapter 2744 is an issue of law that is particularly suitable for resolution by

summary judgment.  *Trader v. Cleveland*, No. 86227, 2006 WL 181899, at *2, ¶ 10 (Ohio App.

8th Dist. Jan. 26, 2006).

**1.  The City**

Chapter 2744 of the Ohio Revised Code governs political-subdivision tort liability.  To

the extent Plaintiff is raising state law claims of trespass and malicious prosecution against the

City, Chapter 2744 affords said political subdivision with immunity from tort liability.  *Theobald

v. Bd. of Comm'rs of Hamilton Cnty.*, 332 F.3d 414, 416 (6th Cir. 2003).  The Ohio Supreme

---

[4]  The Sixth Circuit recently noted division among Ohio courts on whether
trespass as an intentional tort.  *Gammarino v. Sycamore Twp.*, No. 24-3149, 2025 WL
674222, at *5 n.4 (6th Cir. March 3, 2025) (observing that "[t]he Ohio Courts of Appeals
often treat civil trespass as an intentional tort" but "several decisions acknowledge the
existence of purely negligent trespass").  *Compare, e.g.*, *Triad Hunter, LLC v. Eagle
Natrium, LLC*, No. 23 MO 0019, 2024 WL 4614638, at *5, ¶ 36 (Ohio App. 7th Dist.
Oct. 29, 2024) (concluding that "intentional conduct is an element of trespass" and "there
is no cause of action for 'negligent trespass' "), *with, e.g.*, *Linley v. DeMoss*, 83 Ohio
App.3d 594, 598 (Ohio 1992) ("The act of [trespass] may be intentional or negligent.").
"Ohio courts have held that political subdivisions are immune from intentional torts such
as malicious prosecution. . . ."  *Stillwagon v. City of Delaware*, 175 F. Supp.3d 874,
907-908 (S.D. Ohio 2016) (citations omitted).

18

(4:23CV1518)

Court has outlined a three-tier analysis for determining whether a political subdivision is entitled

to immunity under Chapter 2744.

> . . . The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function.  R.C. 2744.02(A)(1).  However, that immunity is not absolute.  R.C. 2744.02(B).
>
> The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability.  . . .
>
> If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

*Colbert v. Cleveland*, 99 Ohio St.3d 215, 216, ¶ 7-9 (2003) (citations omitted).  The statutory

definition of "governmental function" includes law enforcement activities.  Ohio Rev. Code

§ 2744.01(C)(2)(a), (b), (i).  The case at bar involves express governmental functions relating to

the enforcement of the Ohio Building Code and the City's Codified Ordinances, as well as the

City's law enforcement functions.  Even if the pendent state law claims are founded in

negligence, none of the exceptions listed in Ohio Rev. Code § 2744.02(B), denying general

liability, apply to the facts alleged in this present case.  *Howard v. Miami Twp. Fire Div.*, 119

Ohio St. 3d. 1, 3-4 ¶ 18 (2008).  The injuries alleged by Plaintiff do not involve the operation of a

motor vehicle (§ 2744.02(B)(1)), a proprietary function (§ 2744.02(B)(2)), public roads

(§ 2744.02(B)(3)), physical defects of a building (§ 2744.02(B)(4)), or a duty expressly imposed

on the City by statute (§ 2744.02(B)(5)).  Accordingly, under Chapter 2744, Defendant City of

Warren is also entitled to statutory immunity from Plaintiff's state law claims.  *Lower v. City of

Columbus*, No. 2:16-CV-0394, 2016 WL 7230853, at *4-5 (S.D. Ohio Dec. 14, 2016).

(4:23CV1518)

In addition, Ohio appellate courts have consistently held that political subdivisions are exempt from intentional tort claims, reasoning that the immunity exceptions listed in Ohio Rev. Code § 2744.02(B) only refer to negligence and do not provide a specific exception for intentional torts. *See, e.g.*, *Griffits v. Newburgh Hts.*, No. 91428, 2009 WL 280376, at *3, ¶ 26 (Ohio App. 8th Dist. Feb. 5, 2009); *Coleman v. Beachwood*, No. 92399, 2009 WL 3387948, at *7, ¶ 51 (Ohio App. 8th Dist. Oct. 22, 2009).

### 2. Individual Defendants

Ohio Rev. Code § 2744.03(A) prescribes the defenses or immunities that a political-subdivision employee may assert to establish nonliability in a civil action for damages allegedly caused by an act or omission in connection with a governmental or proprietary function. *Argabrite v. Neer*, 149 Ohio St.3d 349, 351 ¶7 (2016). Section 2744.03(A) provides, in pertinent part:

> (A)  In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> *   *   *
>
> (6)  In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
>
> (a)  The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b)  The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c)  Civil liability is expressly imposed upon the employee by a section of the Revised Code.  Civil liability shall not be construed to exist under another section

20

(4:23CV1518)

> of the Revised Code merely because that section imposes a responsibility or
> mandatory duty upon an employee, because that section provides for a criminal
> penalty, because of a general authorization in that section that an employee may
> sue and be sued, or because the section uses the term "shall" in a provision
> pertaining to an employee.

By its terms, § 2744.03(A)(6) operates as a presumption of immunity. *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1995). As with the subdivision itself, this presumption may be overcome only by demonstrating that a statutory exception to immunity applies. *M.B. v. Elyria City Bd. of Educ.*, No. 05CA008831, 2006 WL 2528567, at *5, ¶ 19 (Ohio App. 9th Dist. Sept. 5, 2006).

According to Plaintiff, "Mayor William Franklin and the Warren city employees can't argue under Trespassing (the three exceptions) . . . exception no consent has ever been given . . . No, emergency existed." ECF No. 63 at PageID #: 949. No factual allegations by Plaintiff follow this. Plaintiff makes no further argument and provides no support for any of the exceptions to apply to any of the Individual Defendants. The only reference Plaintiff makes to "bad faith" or "wanton" is in a general denunciation of government conduct in relation to property rights. *See* ECF No. 63 at PageID #: 942 ("When government employees engage in these illegal acts which are defined in Section 242 of Title 18, it as a crime known as illegally acting and showing of a wanton and disregard for its citizens and in bad faith Under the Color of Law, which meets the exception clause for the waiver of immunity.") (underlining in original).[5]

None of the exceptions apply in the case at bar. First, there are no allegations or evidence establishing that Mayor Franklin, Building Official Taneyhill, and/or Director Colbert were acting outside the scope of their employment with the City. Therefore, the § 2744.03(A)(6)(a)

---

[5] Section 242, 18 U.S.C., makes it a crime to willfully violate someone's constitutional rights.

(4:23CV1518)

does not apply.  Nor does the § 2744.03(A)(6)(c) exception apply, as Plaintiff fails to allege and the Court is not aware of any Revised Code section that expressly imposes civil liability on the Individual Defendants under the circumstances of the present case.

The exception under § 2744.03(A)(6)(b) is also inapplicable.  The Individual Defendants acted in furtherance of their duty to safeguard the public via enforcement of the Ohio Building Code and the City's Codified Ordinances.  There is no evidence that Mayor Franklin, Building Official Taneyhill, and/or Director Colbert behaved with the requisite level of mental culpability to establish that any of them acted wantonly, recklessly, maliciously or in bad faith.  *See, e.g.*, *Wiley v. City of Columbus*, 36 F.4th 661, 671 (6th Cir. 2022) (holding defendant law enforcement officers were immune under § 2744.03(A)(6) to plaintiff's state law claims).  "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result."  *Anderson v. Massillon*, 134 Ohio St. 3d. 380, 388 ¶33 (2012) (citations omitted).  "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.  *Id.* ¶ 34 (citations omitted).  Both wanton and reckless misconduct require that the actor must be conscious that his conduct will, in all probability, result in injury.  *Id.* ¶¶ 33-34; *see also* *O'Toole v. Denihan*, 118 Ohio St.3d 374, 386 ¶ 73 (2008) ("Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk.").  Because Plaintiff cannot establish the lower standards of wanton or reckless misconduct, the intentional standards of malice and bad faith cannot be met.

(4:23CV1518)

### 3.  Pendent State Law Claims Also Fail on the Merits

Plaintiff states that "Defendant, confessed that on June 6, 2023 he trespassed and did not give prior notification to enter into plaintiffs' (sic) property to conduct an asbestos test with an outside contractor, See Charles Carroll's affidavit, See case file No: #2850". . . ." ECF No. 63 at PageID #: 935.  Plaintiff, however, does not provide an affidavit from Charles Carroll. According to Defendants, there also is no reference to June 6, 2023 in "Case #: 2850" from the City's Engineering, Planning & Building Department.  Defendants' Reply Memorandum (ECF No. 67) at PageID #: 1017.

A government official does not trespass when entering the curtilage of a premises to determine whether any building code violations exist. *Conrad*, 243 F. Supp.3d at 906. Furthermore, an administrative entry into a commercial property is only permitted with a warrant. *See*, 387 U.S. at 545-46.  Here, Taneyhill visually observed the exterior of Plaintiff's Property and obtained an administrative search warrant to search the interior of the commercial property. As a result, there was no trespass and this state law claim fails on the merits.

"To state a malicious prosecution claim under Ohio law, a plaintiff must show: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the criminal defendant." *Petsche v. Hruby*, 773 F. Supp.3d 563, 580 (N.D. Ohio 2025) (citing *Criss v. Springfield Twp.*, 56 Ohio St.3d 82, 84 (1990); *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 144 (1990)).  From the start, the state court action was initiated as a result of Plaintiff's violations of the City's Codified Ordinances.  There was probable cause for the prosecution based upon evidence gathered during the administrative proceedings.  In addition, there is no evidence that the prosecution was

(4:23CV1518)

implemented as a result of anything other than Plaintiff's failure to comply with the law – rather than out of malice.  And because the criminal charges were dismissed without prejudice to allow Plaintiff to repair the commercial property, the state court action was not terminated in Plaintiff's favor.  Therefore, the malicious prosecution claim fails on the merits.

### V.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material fact and the movants are entitled to a judgment as a matter of law.  For the foregoing reasons and those that have been articulated in the memoranda of the points and authorities on which Defendants rely, Defendants City of Warren, Ohio, Mayor William Franklin, Building Official Christopher Taneyhill, and Director of Public Service and Safety Services Eddie Colbert's Motion for Summary Judgment (ECF No. 58) is granted.  Plaintiff's Motion for Mandatory Settlement Conference (ECF No. 60) is denied as moot.  Final judgment will be entered dismissing with prejudice all of Plaintiff's claims against Defendants in the Amended Complaint (ECF No. 29-1) .


IT IS SO ORDERED.


    September 17, 2025                                */s/ Benita Y. Pearson*
Date                                           Benita Y. Pearson
                                              United States District Judge